# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JIM A. ATWOOD,** in his individual capacity as the trustee of the Jim A. Atwood Trust dated August 10, 2017, **JIM A. ATWOOD**, an individual, and **J.A. ATWOOD CORPORATION**, an Oregon Corporation,<br><br>Plaintiffs,<br><br>v.<br><br>**KRIS STRICKLER,** an individual, **DEBBIE LUND**, an individual, **JOHN BOALS**, an individual, and **LAMAR OBIE COMPANY, LLC**, a Delaware limited liability company,<br><br>Defendants. | Case No. 3:19-cv-01699-IM<br><br>**OPINION AND ORDER** |

**IMMERGUT, District Judge.**

Jim A. Atwood, as an individual and in his capacity as trustee for the Jim A. Atwood Trust, and J.A. Atwood Corporation (collectively "Plaintiffs") bring this action alleging various claims arising from a dispute over a permit for an outdoor advertising sign. ECF 84 at 1. The outdoor advertising sign is located on property owned by the Atwood Trust on West Burnside Street in Portland, Oregon. *Id.* at ¶ 2. Defendants are three employees of the Oregon Department

of Transportation ("ODOT")—Kris Strickler, Debbie Lund, and John Boals[1]—(collectively "State Defendants") and Lamar Obie Company, LLC ("Lamar"). *Id.* at ¶¶ 15–16 Plaintiffs bring three claims against the State Defendants pursuant to 42 U.S.C. § 1983, alleging violations of Plaintiffs' First, Fifth, and Fourteenth Amendment rights. *Id.* at ¶¶ 35–60. Plaintiffs also seek a declaratory judgment against the State Defendants and Lamar under 28 U.S.C. § 2201 *et seq.*[2] *Id.* at ¶¶ 61–69. In addition, Plaintiffs bring claims against Lamar for (1) tortious interference with economic relations; (2) breach of the duty of good faith and fair dealing; (3) conversion; (4) replevin; and (5) financial elder abuse. *Id.* at ¶¶ 70–106.

This matter comes before the Court on the State Defendants' Motion to Dismiss the Second Amended Complaint ("SAC") pursuant to Fed. R. Civ. P. 12(b)(1) and (6), ECF 95, Defendant Lamar's Motion to Dismiss the Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6), ECF 92, and Defendant's Lamar's Motion to Strike pursuant to Fed. R. Civ. P. 12(f), ECF 93.

On May 28, 2020, this Court held a telephonic hearing on Defendants' motions to dismiss and motion to strike. ECF 92, 93, 95. After reviewing the pleadings and arguments of counsel, this Court finds that it lacks jurisdiction to hear the claims against the State Defendants under the doctrine of sovereign immunity. The State Defendants' Motion to Dismiss is therefore granted. This Court declines to exercise supplemental jurisdiction over the remaining state law claims against Defendant Lamar. Defendant Lamar's Motion to Dismiss is thus granted, and the Motion to Strike is denied as moot.

---

[1] John Boals replaced former defendant Scott Claus pursuant to Fed. R. Civ. P. 25(d) after replacing Mr. Claus as the State Right-of-Way Manager at ODOT. *See* ECF 108.

[2] Plaintiffs erroneously cited "22 U.S.C. § 2201 *et seq*" in the Second Amended Complaint. ECF 84 at 14.

**STANDARDS**

Federal courts are courts of limited jurisdiction. *Gunn v. Minton*, 568 U.S. 251, 256 (2013). As such, a court is to presume "that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted); *see also Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) for lack of "subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). An objection that a particular court lacks subject matter jurisdiction may be raised by any party, or by the court on its own initiative, at any time. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006); Fed. R. Civ. P. 12(b)(1). The Court must dismiss any case over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3); *see also Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015) (noting that when a court lacks subject-matter jurisdiction, meaning it lacks the statutory or constitutional power to adjudicate a case, the court must dismiss the complaint, even *sua sponte*, if necessary).

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing

PAGE 3 – OPINION AND ORDER

party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit a plaintiff's legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epstein Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted).

## BACKGROUND

This dispute concerns permitting for an outdoor advertising sign (hereinafter the "Wall Sign") located on West Burnside Street in Portland, Oregon. ECF 84 at ¶ 2. The Oregon Motorist Information Act of 1971 ("OMIA") and the regulations promulgated pursuant to the Act prescribe rules for outdoor advertising signs visible to the public from state highways. O.R.S. 377.715. The statutory scheme was enacted to promote public safety, preserve the recreational value of travel on public highways, and preserve the natural beauty of highway areas, among other reasons. O.R.S. 377.705. The OMIA requires outdoor advertising signs, as defined under the statute, to have a permit issued by the Oregon Department of Transportation ("ODOT") or risk suffering penalties. O.R.S. 377.715. ODOT manages the issuing of permits, notices of

PAGE 4 – OPINION AND ORDER

abandonment, fines, and penalties for outdoor advertisements such as the Wall Sign. ECF 84 at ¶ 15. Regulations issued pursuant to the OMIA have effectively capped the number of permits available for outdoor advertising signs located in commercial or industrial zones. *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or. 634, 638 (2001). Burnside Street was designated as a state highway on October 1, 2012. ECF 84 at ¶ 3. At that time, outdoor advertisements on Burnside Street became subject to the regulations under the OMIA and therefore required permits.

The sign at issue in this case qualifies as a "nonconforming sign," in part because it is substantially larger than the signs that are allowed under the new permitting scheme provided by OMIA regulations. *See* ECF 4, Ex. 6 (stating the wall sign is over 35 feet in height and 54 feet in length). In 2009, J A Atwood Corp. ("Atwood Corp."), the predecessor to the Atwood Trust, entered into a lease agreement for the Wall Sign with Onsite Advertising Services ("Onsite"). ECF 84 at ¶ 18. Under this lease agreement, Onsite would sell advertising space on the Wall Sign, and pay a percentage of the revenue generated by the Wall Sign to Atwood Corp. *Id.* The agreement gave Atwood Corp. final approval of the subject matter for the advertisements on the Wall Sign. *Id.* Onsite was acquired by OnDisplay Advertising LLC ("OnDisplay") in late 2013 or early 2014. *Id.* at ¶ 19. An addendum to the lease agreement was executed to reflect the assignment of Onsite's rights and obligations to OnDisplay. *Id.*

In 2014, OnDisplay worked with Mr. Atwood to prepare an ODOT permit application for the Wall Sign. *Id.* at ¶ 20. The permit application listed OnDisplay as the "applicant" and listed Mr. Atwood and Atwood Corp. as the property owners. *Id.* at Ex. 1. Along with its permit application, OnDisplay submitted a letter written by Mr. Atwood granting permission to OnDisplay to apply for a permit. *Id.* at 7. The letter explained that "OnDisplay Advertising

works with our company to sell advertising on this mural" and further provided instructions that "[t]his permit shall be in the name of: OnDisplay Advertising, J A Atwood, J A Atwood Corporation, their successors and assigns, as his or its interest may appear." *Id.* ODOT issued the permit ("the permit") in OnDisplay's name only. *Id.* at ¶ 23. Mr. Atwood was unaware that the permit was issued in this manner. *Id.*

In 2015, Lamar acquired certain assets from OnDisplay, including the lease and permit for the Wall Sign to Lamar. *Id.* ODOT acknowledged the transfer. *Id.* at ¶ 24. Plaintiffs were not aware that the permit for the Wall Sign was transferred to Lamar. *Id.* After Lamar acquired the lease of the Wall Sign, revenue decreased because there were periods during which Lamar did not use the wall sign for advertising. *Id.* at ¶ 25. In June of 2018, Plaintiffs notified Lamar that they did not intend to renew its lease. *Id.* The lease ended June 30, 2019. *Id.*

In February of 2019, Plaintiffs learned for the first time that OnDisplay had obtained the permit in OnDisplay's name only and then later transferred the permit to Lamar. *Id.* at ¶ 26. Lamar refused to transfer the permit to Plaintiffs and attempted to renegotiate the lease agreement at a less favorable rate. *Id.* at ¶ 72. Lamar refused to negotiate selling the permit to Plaintiffs. *Id.* at ¶ 26.

Plaintiffs attempted to have ODOT transfer the permit or re-issue the permit in their name. *Id.* at ¶ 30. ODOT verbally denied Plaintiffs' request to transfer the permit. *Id.* Plaintiffs also submitted a new application for a permit. *Id.* On October 2, 2019, ODOT rejected Plaintiffs' application. *Id.* The Notice of Denial informed Plaintiffs that Lamar used the permit formerly issued for the Wall Sign to request a "relocation credit." *Id.* Relocation credits allow an entity to use a permit to advertise in a new location once the sign at the previous location is removed and other criteria are met. *See* O.R.S. 377.762. Because Plaintiffs have been unable to acquire the

former permit or a new permit from ODOT, they are unable to use the Wall Sign for advertising

purposes without risking fines or sanctions by ODOT and the City of Portland. ECF 84 at ¶ 34.

## DISCUSSION

### A. The State Defendants' Motion to Dismiss

The State Defendants move to dismiss the SAC on the following grounds: (1) this Court

lacks subject matter jurisdiction over this dispute because of sovereign immunity; (2) the

complaint fails to state a claim upon which relief can be granted; and (3) the claims are barred by

the statute of limitations. As discussed more fully below, this Court finds that sovereign

immunity bars this Court from adjudicating the claims as alleged against the State Defendants.

### 1. Sovereign Immunity

The State Defendants argue that the constitutional claims against the State Defendants

should be dismissed because this Court lacks subject matter jurisdiction under the Eleventh

Amendment. ECF 95 at 7. In their opposition, Plaintiffs assert that the claims are permissible

under the *Ex Parte Young* exception to sovereign immunity. ECF 100 at 3.

The Eleventh Amendment to the United States Constitution provides: "The Judicial

power of the United States shall not be construed to extend to any suit in law or equity,

commenced or prosecuted against one of the United States by Citizens of another State, or by

Citizens or Subjects of any Foreign State." The Supreme Court has long held that the Eleventh

Amendment bars federal suits against a non-consenting state by its own citizens as well as by

citizens of another state. *See Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974); *Hans v.

Louisiana*, 134 U.S. 1 (1890). State sovereign immunity also proscribes federal suits against state

agencies and state departments. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100,

104 (1984); *Papason v. Allain*, 478 U.S. 265, 276–78 (1986).

The Supreme Court recognized a limited exception to state sovereign immunity in *Ex Parte Young*, 209 U.S. 123, 155–56 (1908). The *Ex Parte Young* doctrine provides a limited exception where a suit is brought for "prospective declaratory or injunctive relief against state officers in their official capacities for alleged violations of federal law." *Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012) (citing *Ex Parte Young*, 209 U.S. at 155–56 (citations omitted)). Under that doctrine, suits seeking prospective relief are generally permissible while suits seeking retroactive relief, such as monetary payments for past violations, are not. *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003). Federal court jurisdiction is therefore proper under *Ex Parte Young* if two conditions are met: (1) Plaintiffs seek prospective relief, and (2) the relief addresses an ongoing violation of federal law. *Idaho v. Coeur dAlene Tribe of Idaho*, 521 U.S. 261, 303 (1997).

Here, the State Defendants argue that the *Ex Parte Young* exception is inapplicable for three reasons: (1) the requested relief of transferring Lamar's permit is retroactive; (2) there is no "continuing violation" of federal law; and (3) the application of the OMIA to Plaintiffs did not unconstitutionally restrict their right to commercial speech. ECF 95 at 8. Plaintiffs argue that they seek only prospective relief by requesting the State Defendants to either transfer or issue a new permit to Plaintiffs. ECF 100 at 3. Plaintiffs further contend that they have adequately alleged continuing constitutional violations under the First, Fifth, and Fourteenth Amendments. *Id.* This Court therefore considers whether the *Ex Parte Young* doctrine permits federal court jurisdiction to hear each of Plaintiffs' constitutional claims.

### a.  Prospective Relief

To satisfy the first condition for applying the *Ex Parte Young* doctrine, Plaintiffs must seek prospective relief, not compensation or "recompense for past mistakes." *Coeur dAlene Tribe of Idaho*, 521 U.S. at 303. In this case, Plaintiffs seek a judgment ordering the State

Defendants to either issue a new permit or transfer the permit currently held by Defendant Lamar to the Atwood Trust. ECF 84 at 19–20. This Court finds that the issuance of a new permit properly qualifies as prospective relief. Courts have allowed suits under *Ex Parte Young* in which a plaintiff seeks to enjoin or compel state action to obtain a permit. *See, e.g.*, *Brennan v. Stewart*, 834 F.2d 1248, 1252 (5th Cir. 1988) (seeking permit for future employment constitutes prospective equitable relief).

Whether the transfer of the permit from Lamar to Plaintiff constitutes prospective or retroactive relief is less clear. As noted by the Supreme Court, "the difference between the type of relief barred by the Eleventh Amendment and that permitted under *Ex Parte Young* will not in many instances be that between day and night." *Edelman*, 415 U.S. at 667. Plaintiffs are barred from obtaining an award that effectively is an "accrued money liability" that represents retroactive payments. *Id.* at 663–64. But Plaintiffs may pursue "payment of state funds . . . as a necessary consequence of compliance in the future with a substantive federal-question determination." *Id.* at 668.  The State Defendants argue that the transfer of Lamar's permit is retroactive because the relief requires the Court to undo a past action. ECF 95 at 8. On one hand, the transference of the permit requires the Court to unravel a series of series of past actions, and the State Defendants may incur costs due to the transfer. The State Defendants issued the permit to OnDisplay who later sold the permit to Defendant Lamar for an unknown value. ECF 84 at ¶¶ 5–6. Thus, the requested relief arguably resembles the payment of funds from a state treasury for a past wrong. On the other hand, the cancellation of Lamar's permit and the issuance of a permit to Plaintiffs may be characterized as future compliance with federal law and thus prospective, even if the State Defendants incur ancillary costs for the transfer. This Court need not make this

determination in the present case because, as explained below, Plaintiffs have not sufficiently alleged a continuing violation of federal law.

### b.  Continuing Violation

This Court next considers whether Plaintiffs have alleged facts that demonstrate a continuing violation of federal law. The application of the *Ex Parte Young* doctrine "has been tailored to conform as precisely as possible to those specific situations in which it is 'necessary to permit the federal courts to vindicate federal rights and hold state officials responsible to the supreme authority of the United States.'" *Papason*, 478 U.S. at 277 (quoting *Pennhurst*, 465 U.S. at 105). The exception does not apply where a state official is alleged to have violated state law alone, *Pennhurst,* 465 U.S. at 106, but only to prevent future or continuing violations of federal law, *Green v. Mansour*, 474 U.S. 64, 73 (1985) (holding the Eleventh Amendment barred the grant of injunctive relief where there was no threat of future violations of federal law after changes in federal law rendered prospective relief moot). Federal courts may consider the legality of past conduct, however, when the relief sought would prevent future violations of federal law. *See Porter*, 319 F.3d at 491 (finding it permissible to consider allegations that were "rooted in past events" when the relief sought was prospective).

### i.  Takings

Plaintiffs' first claim for relief alleges that the State Defendants violated the Takings Clause of the Fifth Amendment by refusing to issue a sign permit to the Atwood Trust, thereby depriving Plaintiffs of the commercial use of the sign. ECF 84 at ¶¶ 35–42. To remedy this violation, Plaintiffs request that this Court order the State Defendants to transfer the permit to the Atwood Trust or issue a new permit to the Atwood Trust. *Id.* at ¶ 41. The Fifth Amendment prohibits the taking of private property for public use without just compensation. U.S. Const. amend. V. The Takings clause "is designed not to limit the governmental interference with

property rights *per se*, but rather to secure *compensation* in the event of otherwise proper interference amounting to a taking." *First English Evangelical Lutheran Church of Glendale v. Cty. of Los Angeles*, 482 U.S. 304, 314 (1987) (emphasis in the original).

As an initial matter, the State Defendants argue that this Court lacks jurisdiction to hear a takings claim based on the denial of Plaintiffs' application for a new permit because that decision, called a Notice of Denial, is an interim agency order. ECF 95 at 15–16 (citing ECF 84 at ¶ 9); *see* ECF 84 at ¶ 30. Plaintiffs have appealed that decision, and the outcome of that hearing will be a final agency order. O.R.S. 183.310(6). The Supreme Court has held that a "claim that the application of government regulations effects a taking of a property interest is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson Cty. Reg. Planning Comm. et al v. Hamilton Bank of Johnson City*, 473 U.S. 172, 187 (1985), *reversed on other grounds by Knick v. Twp. of Scott, Pa.*, 139 S. Ct. 2162 (2019). At the hearing, Plaintiffs conceded that they no longer seek the issuance of a new permit under the takings claim. Plaintiffs therefore seek only the transfer of the permit from Lamar to Plaintiffs under this claim. *See* ECF 84 at 20.

The State Defendants further argue that this claim is barred because the only type of relief authorized under a takings claim is just compensation and retrospective monetary relief is prohibited under the Eleventh Amendment. ECF 95 at 15. Plaintiffs respond that prospective injunctive relief is available under the Fifth Amendment. ECF 100 at 13–14. The Supreme Court has held that "[e]quitable relief is not available to enjoin an alleged taking of private property for a public use, duly authorized by law, when a suit for compensation can be brought against the sovereign subsequent to the taking." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1016 (1984)

(citing *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 697 n.18 (1949)). "As long as just compensation remedies are available . . . injunctive relief will be foreclosed." *Knick v. Twp. of Scott*, 149 S. Ct. 2162, 2172 (2019). Because the Constitution requires a particular remedy under the Takings Clause—the payment of just compensation—the state "is required to provide that remedy in its own courts, notwithstanding sovereign immunity." *Jachetta v. United States*, 653 F.3d 898, 909 (9th Cir. 2011) (quoting *DLX, Inc. v. Kentucky*, 381 F.3d 511, 528 (6th Cir. 2004)). Accordingly, compensation remedies are available to Plaintiffs in a state court proceeding. Plaintiffs therefore are barred from seeking injunctive relief from this Court under the takings claim. Furthermore, even assuming that injunctive relief is permissible, the transfer of a permit that was issued to OnDisplay and later transferred to Lamar likely qualifies as retrospective relief. This Court therefore finds that the *Ex Parte Young* doctrine is inapplicable to Plaintiffs' takings claim and dismisses this claim without prejudice.

### ii. Substantive Due Process

Plaintiffs' second claim for relief alleges the State Defendants violated Plaintiffs' substantive due process rights by unlawfully depriving Plaintiffs of the use of the Wall Sign. ECF 84 at ¶¶ 43–51. In order to succeed on a substantive due process claim, a plaintiff must show a government deprivation of constitutionally protected life, liberty, or property in such a way that "shocks the conscience" or "interferes with the rights implicit in the concept of ordered liberty." *Nunez v. Cty. of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)) (internal quotation marks omitted). Plaintiffs claim that the State Defendants deprived them of their constitutionally protected property interest in using the Wall Sign for advertising, whether on their own or by contracting with other parties, and liberty interest in engaging in such a profession. ECF 84 at ¶ 46; ECF 100 at 15. Plaintiffs assert that the State Defendants caused the deprivation of these rights "[b]y failing to issue a permit to Atwood

(or notify Atwood in 2015 that the Permit would not be issued in Atwood's name), and by issuing a relocation credit and refusing now to authorize a future permit on that basis." ECF 84 at ¶ 46.

Before turning to the merits of the claim, the State Defendants argue that the due process claim should be dismissed because the claim is preempted by the First and Fifth Amendment claims. ECF 95 at 10. Plaintiffs oppose the dismissal of the due process claim on preemption grounds, asserting that the deprivation of rights identified in the due process claim are distinct from the other constitutional claims against the State Defendants. ECF 100 at 15.

Where a particular constitutional amendment "'provides an explicit textual source of constitutional protection' against a particular sort of government behavior," the Court must analyze the claim under that amendment rather than the more generalized notion of substantive due process." *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1980)). A plaintiff may not "double up" on constitutional claims where a claim may be analyzed under an explicit textual source of a right under the Constitution. *Ramirez v. Butte-Silver Bow Cty.*, 298 F.3d 1022, 1029 (9th Cir. 2002). If, however, a substantive due process claim is not duplicative of the protections under another claim, both claims may proceed concurrently. Certain harms "affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands." *Armendariz v. Penman*, 75 F.3d 1311, 1320 (9th Cir. 1996) (en banc).

This Court finds that Plaintiffs' due process claim addresses distinct interests in this case. First, under the due process claim, Plaintiffs allege that the deprivation of the commercial use of the sign was "unjustified." ECF 84 at ¶ 46. The Takings Clause requires compensation in the event of the government's proper interference with an individual's property rights. *Lingle v.*

*Chevron U.S.A. Inc.*, 544 U.S. 528, 543 (2005). But an arbitrary deprivation of a property right, although not a taking, may give rise to a viable substantive due process claim. *Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd.*, 509 F.3d 1020, 1025 (9th Cir. 2007). Where a deprivation is so arbitrary as to violate due process, Plaintiffs may not recover under a takings claim because "[n]o amount of compensation can authorize such action." *Lingle*, 544 U.S. at 543. Accordingly, the theory of liability alleged under the due process claim provides unique protection that is different from the protected interests guaranteed under the Takings Clause and the First Amendment. Furthermore, Plaintiffs seek relief for the deprivation of their liberty interest in the profession of advertising. This liberty interest is not protected under any other claim. Consequently, this Court declines to dismiss the due process claim as preempted by the claims for First and Fifth Amendment violations.

This Court next considers whether Plaintiffs have sufficiently alleged the deprivation of a constitutionally protected right.

### 1.    Property Right

Plaintiffs allege that the State Defendants deprived them of the commercial use of the Wall Sign by refusing to issue a permit to Plaintiffs. In some circumstances, a party may have a constitutionally protected property interest in a government benefit such as a permit. *Gerhart v. Lake Cty.*, 637 F.3d 1013, 1019 (9th Cir. 2011). Property interests are not created by the Constitution but "stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colls. v. Roth,* 408 U.S. 564, 577 (1972). State law can create a protected property interest in a permit if there are "significant limitations" on the discretion of a decision maker to deny a permit once the requirements for the permit are met. *Gerhart*, 637 F.3d at 1019

(quoting *Braswell v. Shoreline Fire Dep't*, 622 F.3d 1099, 1102 (9th Cir. 2010) (quotations and alterations omitted)). To have a protected interest in a permit, "a person clearly must have more than an abstract need or desire" for the permit. *Roth,* 408 U.S. at 577. Plaintiffs must show a "legitimate claim of entitlement" to the permit. *Id.*

Here, Plaintiffs argue that they have a "legitimate claim of entitlement" to a nonconforming sign permit. ECF 100 at 15; ECF 84 at ¶¶ 4, 17, 23. The OMIA provides the following for the issuance of nonconforming sign permits:

> [T]he owner of any outdoor advertising sign visible from a road or street that is designated as a state highway . . . *is entitled to the issuance of an outdoor advertising sign permit* for the sign upon application by the owner of the sign, payment of the fee established by the department . . . and receipt of the affidavit [of city or county necessary for the permit] if the sign was lawfully located within a commercial or industrial zone at the time of designation as a state highway.

O.R.S. 377.712(2) (emphasis added). Under this statute, a sign owner is "entitled" to the issuance of permit once the conditions listed in the statute have been satisfied. *See id.* This statute restrains ODOT's discretion and therefore may support the creation of a protected property interest. *See Braswell*, 622 F.3d at 1102 (9th Cir. 2010). The State Defendants also concede that the permit is a property right. ECF 104 at 4.

Even so, Plaintiffs have failed to sufficiently allege an entitlement to the permit. First, the initial permit application, completed in 2015, was not submitted by Plaintiffs but by their lessee OnDisplay. ECF 4 at 17; ECF 84 at ¶ 21. The application listed OnDisplay as the sole applicant for the sign permit. ECF 84 at ¶ 21. Although Plaintiffs submitted a letter directing ODOT to issue the permit jointly to Plaintiffs and OnDisplay, they were not the permit applicants. *Id.* Plaintiffs have not alleged that they applied for a permit, complied with the permit requirements, and were denied a permit in 2015. In addition, under OMIA regulations, an "outdoor advertising

PAGE 15 – OPINION AND ORDER

sign permit owner" is defined as a "*single person*, or their authorized representative, who holds the right to authorize an activity associated with the permit including sign reconstruction, direct relocation, relocation credit request or the sale of a sign permit or relocation credit." O.A.R. 734-059-0015(5) (emphasis added). Pursuant to these regulations, ODOT issued the permit to the singular applicant provided in the application—OnDisplay. ECF 84 at ¶ 5. Consequently, Plaintiffs complaint does not allege facts sufficient to demonstrate an entitlement to the issuance of a joint permit in 2015. *See id.* at ¶ 46. Therefore, Plaintiffs have failed to sufficiently allege an entitlement to the permit issued to OnDisplay in 2015.

Second, the application for a new permit in 2019 was denied because ODOT previously issued a nonconforming permit for the Wall Sign at issue and that permit was used to obtain a relocation credit. Plaintiffs applied for a permit on September 17, 2019. *Id.* at ¶ 30. Prior to the submission of this application, OnDisplay Advertising transferred the permit to Defendant Lamar. *Id.* at ¶ 24. Defendant Lamar then exchanged the permit for a "relocation credit" that would allow Lamar to install an outdoor advertisement at another location. *Id.* at ¶ 29. Because Lamar used the permit to obtain a relocation credit, ODOT refused to transfer the permit or issue a new nonconforming sign permit to Plaintiffs. *Id.* at ¶ 30. Plaintiffs have not shown an entitlement to the permit on this basis. Plaintiffs thus have not alleged a protected property interest in the nonconforming sign permit.

2.      Liberty Interest in Advertising Profession

Plaintiffs next argue that the State Defendants deprived them of their liberty interest in engaging in the profession of advertising. A person may have a protected interest in private employment. *Greene v. McElroy*, 360 U.S. 474 (1959). A plaintiff has a liberty interest in employment protected by the Due Process Clause if the state actor's conduct "effectively

precludes future work in the individual's chosen profession." *Merritt v. Mackey*, 827 F.2d 1368,

1373 (9th Cir. 1987). To establish a violation of such a liberty interest, Plaintiffs must show that

the State Defendants "destroyed [their] freedom to take advantage of other employment

opportunities" and that it is "virtually impossible for [them] to find new employment in his

chosen field." *Engquist v. Or. Dep't of Agric.*, 478 F.3d 985, 998 (9th Cir. 2007) (quoting

*Bordelon v. Chi. Sch. Reform Bd. of Trustees*, 233 F.3d 524, 531 (7th Cir. 2000) (internal

quotation marks omitted).

Here, Plaintiffs have not alleged that their property may no longer be used for

advertising. Plaintiffs allege only that they have been unable to obtain a nonconforming sign

permit. Under the OMIA regulations, an outdoor advertising permit shall be issued to any person

who complies with the OMIA. *See* O.R.S. 377.725(2). Plaintiffs therefore may continue to

conduct business in their chosen profession of advertising. Accordingly, they have failed to

establish a violation of this liberty interest.

### iii. Commercial Speech

Plaintiffs' third claim for relief alleges that the State Defendants infringed on Plaintiffs'

First Amendment rights to engage in commercial speech. ECF 84 at ¶¶ 52–60. The First

Amendment provides that "Congress shall make no law . . . abridging the freedom of speech."

U.S. Const. amend. I. The Constitution "accords a lesser protection to commercial speech than to

other constitutionally guaranteed expression." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv.

Comm'n of New York*, 447 U.S. 557, 562–563 (1980). In *Central Hudson*, the Supreme Court

adopted a four-part test for assessing the constitutionality of a restriction on commercial speech:

> (1) The First Amendment protects commercial speech only if that
> speech concerns lawful activity and is not misleading. A restriction
> on otherwise protected commercial speech is valid only if it (2)
> seeks to implement a substantial governmental interest, (3) directly

advances that interest, and (4) reaches no further than necessary to accomplish the given objective.

*Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 507 (1981) (citing *Cent. Hudson*, 447 U.S. at 563–66). The parties do not dispute that this test applies or that the advertising merits First Amendment scrutiny. *See* ECF 95 at 11; ECF 100 at 7.

Plaintiffs do not bring a facial challenge to the constitutionality of the OMIA. ECF 100 at 12. Plaintiffs concede that the State Defendants have a substantial interest in promoting the purposes of the OMIA, such as promoting public safety, preserving aesthetic features of highway areas, and prohibiting the indiscriminate use of outdoor advertising. ECF 100 at 7, 12; *see* O.R.S. 377.705 (stating the policy purposes of the OMIA). Nevertheless, Plaintiffs challenge the constitutionality of the OMIA as-applied to Plaintiffs. ECF 100 at 7. "An as-applied challenge contends that the law is unconstitutional as applied to the litigant's particular speech activity, even though the law may be capable of valid application to others." *Foti v. City of Menlo Park*, 146 F.3d 629, 635 (9th Cir. 1998). Plaintiffs allege that "[a]s applied to Plaintiffs, the [State] Defendants' refusal to transfer or re-issue the permit to Plaintiffs fails to advance any substantial governmental interest and accordingly its conduct lacks a proportional relation to any such interest." ECF 84 at ¶ 57. Therefore, Plaintiffs dispute whether the application of the OMIA restrictions to Plaintiffs satisfies the third and fourth *Central Hudson* factors.

Under the third *Central Hudson* factor, the Court examines whether a government restriction directly advances the asserted government interest. *Cent. Hudson*, 447 U.S. at 566. But the analysis of whether a restriction directly advances a government interest "cannot be answered by limiting the inquiry to whether the governmental interest is directly advanced as applied to a single person or entity." *United States v. Edge Broadcasting Co.*, 509 U.S. 418, 427 (1993); *see also Vanguard Outdoor, LLC v. City of Los Angeles,* 648 F.3d 737, 743 (9th Cir.

PAGE 18 – OPINION AND ORDER

2011) ("[A] *Central Hudson* challenge is not focused on the particular plaintiff; instead, the Court must look at the whether the City's ban advances its interests in its general application, not specifically with respect to a particular speaker." (quotations omitted)).

Here, Plaintiffs argue that the State Defendants' refusal to issue Plaintiffs a permit fails to advance any government interest because "up until June 2019 Plaintiffs had been allowed to exhibit speech at that very location without any concern that the advertising was 'indiscriminate,' a threat to the public safety or that it somehow failed to preserve the recreational value or natural beauty and aesthetic features of West Burnside Street." ECF 100 at 7; ECF 84 at ¶ 55. Plaintiffs further allege that the denial of a permit "is not appropriate in light of ODOT's previous issuance of a permit for the Wall Sign, and the Wall Sign's compliance with the OMIA." ECF 84 at ¶ 55. But Plaintiffs allege no details which show that the general application of the OMIA fails to advance the government interests at stake in this case. *See* O.R.S. 377.705. Rather, Plaintiffs focus only on whether the OMIA advances a substantial government interest by refusing to issue a permit to Plaintiffs. The Supreme Court has previously found that outdoor sign restrictions directly advance the government interests in traffic safety and the appearance of a city. *See, e.g.*, *Metromedia*, 453 U.S. at 512 (finding prohibition on offsite billboards directly advanced municipal interests in safety and aesthetics even though onsite billboards were permissible under the ordinance). Based on the well pleaded allegations in the complaint, this Court finds no basis to determine that the OMIA fails to directly advance the governmental interests at issue.

The fourth *Central Hudson* factor asks whether the regulation is more extensive than necessary to serve the government interest. *Cent. Hudson*, 447 U.S. at 566. The validity of a restriction is judged by the relation the restriction bears to the government interest, "not by the extent to which it furthers the Government's interest in an individual case." *Edge Broadcasting*

*Co.*, 509 U.S. at 430–31. In *Metromedia*, the Supreme Court found that a city ordinance prohibiting offsite billboards was not overly broad where the city had a sufficient basis to believe that billboards were traffic hazards and unattractive. 453 U.S. at 508. The Court noted that the city had not prohibited all billboards, but allowed onsite advertising and other exempted signs. Once again, Plaintiffs have not alleged facts that demonstrate that the OMIA restrictions are overly extensive. Because Plaintiffs fail to allege any facts showing that the restrictions on pre-existing sign permits are too broad, Plaintiffs' challenge under *Central Hudson* fails.

This Court therefore finds that Plaintiffs have failed to sufficiently allege an ongoing violation of federal law. Accordingly, the *Ex Parte Young* doctrine may not support this Court's exercise of jurisdiction over the claims against the State Defendants. All claims against the State Defendants are dismissed without prejudice.[3]

## B.  Defendant Lamar's Motion to Dismiss

Plaintiffs bring claims against Defendant Lamar arising under Oregon law for tortious interference with economic relations, conversion, replevin, and financial elder abuse. *See* ECF 84. Plaintiffs also seek a declaratory judgment against Lamar under 28 U.S.C. § 2201 *et seq*. *Id.* at ¶¶ 61–69. Based on the section 1983 claims against the State Defendants, Plaintiffs bring this case under this Court's federal question jurisdiction pursuant to 28 U.S.C. § 1331 and jurisdiction over section 1983 claims pursuant to 28 U.S.C. § 1343(3). ECF 84 at ¶ 10–11. Plaintiffs have not alleged that this Court has subject matter jurisdiction over the state law claims pursuant to diversity jurisdiction. *See* ECF 84 at ¶ 10–11. At the hearing, Plaintiffs conceded that there is no independent basis for jurisdiction in federal court to pursue the claims against Lamar.

---

[3] In light of this Court's determination that it lacks jurisdiction, the State Defendant's challenge to the SAC based on statute of limitations grounds is not addressed.

This Court therefore must determine whether to exercise supplemental jurisdiction over the remaining state law claims pursuant to 28 U.S.C. § 1367.

"A court may decline to exercise supplemental jurisdiction over state-law claims once it has dismissed all the claims over which it has original jurisdiction." *Ove v. Gwinn*, 264 F.3d 817, 826 (9th Cir. 2001) (citing 28 U.S.C. § 1367(c)(3)). When determining whether to decline supplemental jurisdiction, the factors to be considered under the pendent jurisdiction doctrine are judicial economy, convenience, fairness, and comity. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). In the usual case in which all the claims where the court has original jurisdiction are dismissed before trial, the balance of factors under the pendent jurisdiction doctrine "will point toward declining to exercise jurisdiction over the remaining state-law claims." *Id.*

This case has not yet proceeded beyond the pleadings and few judicial resources are wasted by dismissing the remaining claims. Dismissal also promotes comity by allowing the Oregon courts to interpret the state law claims. Accordingly, the balance of factors under the pendent jurisdiction doctrine points in favor of dismissing the remaining state law claims. This Court declines to exercise supplemental jurisdiction over the claims and dismisses all claims against Defendant Lamar without prejudice. Defendant Lamar's motion to strike is therefore also denied as moot.

## CONCLUSION

For the reasons above, the State Defendants' Motion to Dismiss, ECF 95, is GRANTED. In addition, Defendant Lamar's Motion to Dismiss, ECF 92, is GRANTED and the Motion to Strike, ECF 93, is DENIED AS MOOT.


**IT IS SO ORDERED**.

PAGE 21 – OPINION AND ORDER

DATED this 29th day of June, 2020.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge